UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| WORLD WIDE STREET PREACHERS' FELLOWSHIP, ET AL. | CIVIL ACTION NO. 05-0513 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TOWN OF COLUMBIA, LOUISIANA | MAG. JUDGE JAMES D. KIRK |

RULING

Plaintiffs World Wide Street Preachers Fellowship ("WWSPF") and Kenneth Coleman, Sr. ("Coleman") (collectively, "the Preachers") filed suit against Defendant Town of Columbia, Louisiana ("Columbia") under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

Pending before the Court are Cross Motions for Summary Judgment [Doc. Nos. 32 & 34]. Both parties have filed memoranda in opposition [Doc. Nos. 37 & 40]. For the following reasons, the Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff WWSPF is an organization of street preachers. Coleman and his pastor, Allen Russell ("Russell"), are members of WWSPF. While demonstrating, members of the WWSPF, carry signs critical of abortion, based on their religious belief that abortion is a sin. Some of these signs are textual and some display pictures of aborted fetuses. The Preachers have carried these signs on numerous occasions in Columbia and in other locales.

When demonstrating in Columbia, the Preachers stand near the intersection of Highway

165 and Church Street ("the intersection") where passing motorists are forced to slow down or stop for a traffic signal.

On December 27, 2003, the Preachers were demonstrating at the southwest corner of the intersection. On that day, Russell requested police intervention and subsequently made a complaint to the Columbia police because one of the Preachers was nearly run over by a passing motorist. Officer Robert Miles arrived on the scene, spoke with the Preachers, and commented on the content and offensiveness of their signs. Miles informed the Preachers that they could continue to demonstrate at that location, but requested that they back away from the edge of the roadway.

On December 30, 2003, the Preachers returned to the same location. Chief of Police, Doug Crockett ('Crockett"), stopped and spoke with the Preachers. Crockett asked the Preachers to put their signs away until he could investigate the legality of their activities, but he did not require them to put the signs away or to disperse. Russell informed Crockett that the Preachers would continue to display their signs until an officer showed him a law that made their activities illegal. Crockett then left the scene and did not return.

On February 12, 2005, the Preachers returned to Columbia to demonstrate. The Preachers were on the southeast corner of the intersection because their previous location was under excavation as part of the relocation and reconstruction of Highway 165. The parties have stipulated that on this date the Preachers were standing on the shoulder of the highway (between the white fog line and the edge of the pavement) as well as on the dirt area adjacent to the pavement. At this location, the paved portion of the shoulder between the fog line and the dirt is approximately two feet wide. At times, the Preachers were also standing within twenty feet of the traffic light, within twenty feet of a crosswalk, within fifteen feet of a fire hydrant, and

2

opposite the construction site. State Trooper John Wiles passed by and allegedly observed the Preachers standing on the white line and in the roadway. Wiles called the Columbia police and advised them that someone needed to come out and ask the Preachers to move off the roadway. Columbia also received complaints from the United Methodist Church, which claims to own the dirt area beside Highway 165 where the Preachers were demonstrating.

As a result of the calls and complaints on February 12, 2005, Officer Miles went to the area where the Preachers were demonstrating. He told the Preachers that the dirt area beside the highway was private property belonging to the Methodist Church and that they could not stand there. He also told the Preachers that the Louisiana State Police had instructed the Columbia police officers to tell the Preachers to move off the roadway. Officer Miles told Russell at least six times that he needed to leave or he would be arrested. When Russell and the other Preachers failed to comply with Officer Miles's requests to leave, Russell was arrested.

Officer Miles's Affidavit of Probable Cause for Arrest Without a Warrant states, in pertinent part, that Miles

> observed a group of people holding signs, and pictures, at the corner of Church St. and U.S. HWY 165 in Columbia. I then approached the Group and advised them that they were causing a disturbance with their actions, and pictures, and that [sic] were on the state right of way, and that they needed to leave the area. At that time a [sic] unidentified W/M approached me and stated that they did not have to move back, or leave. . . . The group didn't have any permit to be on the right of way, and they were to [sic] close to the flashing beacon (red light), and also they didn't have a permit issued through mayor's court. The above listed subject [Russell] was advised his rights per Miranda and placed under arrest for the violations listed above, and his refusal to comply with the orders given.

Russell was charged with three counts: (1) resisting an officer, La. Rev. Stat. § 14:108B(1)(D); (2) stopping or standing or parking in specified areas, La. Rev. Stat. § 32:143(7)(A); and (3) processions, marches or demonstrations without a permit, La. Rev. Stat. §

3

14:326(A),(B),(C).

On March 22, 2005, the Preachers filed this instant suit.

On March 23, 2005, the Court issued a temporary restraining order, which enjoined Columbia from interfering with the Preachers' First Amendment activities until a preliminary injunction hearing could be held.

On March 25, 2005, the Preachers returned to the southeast side of the intersection to demonstrate. At this time, the pastor of the United Methodist Church asked the Preachers to leave the church property. Additionally, Officer Clay Bennett, who witnessed the Preachers standing on the shoulder of Highway 165 and on the church property, asked the Preachers to leave. The Preachers ended their demonstration and dispersed.

On March 26, 2005, Russell spoke with Officer Bennett and requested an application for a public demonstration permit. Officer Bennett informed Russell that he was unsure of the application process and that Russell should go to the town hall on Monday morning for more information. Officer Bennett also told Russell that he did not believe there was any location along Highway 165 in Columbia where the Preachers could legally demonstrate. Finally, Officer Bennett advised Russell that the Preachers should not return to the intersection to demonstrate until after the preliminary injunction hearing, and that, if they returned in the meantime, they would be removed.

On April 1, 2005, the Court held a hearing on the Preachers' request for preliminary injunction.

On May 5, 2005, the Court issued an Opinion, granting in part and denying in part the Preachers' request for a preliminary injunction. The Court determined that the Preachers were unable to establish a substantial likelihood that they would succeed on the merits of their claim,

and the Court declined to reach the issue of the statutes' constitutionality. However, in an abundance of caution, the Court granted the Preachers' request for a preliminary injunction and enjoined Columbia from enforcing La. Rev. Stat. § 14:108; La. Rev. Stat. § 32:143; and La. Rev. Stat. § 14:326 as those statutes had been applied.

Although the Court determined that the three statutes relied upon by Columbia to arrest Russell were inapplicable to the activities of the Preachers, the Court denied the Preachers' motion in all other respects. Specifically, the Court's Opinion did not enjoin Columbia from interfering, removing, or arresting the Preachers under constitutionally valid laws as they demonstrate and hold signs on the shoulder of Highway 165 at the southeast corner of the intersection with Church Street or on any private property. The Court also determined that the potential restrictions on the exercise of the Preachers' First Amendment activities were content-neutral time, place, and manner regulations of general applicability.

On May 21, 2005, the Preachers returned to the intersection to demonstrate. At this time, for safety reasons, officers repeatedly asked the Preachers to move their demonstration approximately 25 feet further down the road towards the center of the bridge and away from the busy intersection and vehicle traffic. The Preachers refused to obey the officers citing the Court's May 5, 2005 Opinion.

One of the Preachers, Coleman, refused to move away from the intersection and lay down on the curb of the street. Coleman was arrested for failing to comply with the officers' requests. Also during this time, Russell allegedly committed a battery on two of the officers. Russell was also arrested for failing to comply with the officers' requests and charged with battery.

Cross Motions for Summary Judgment have been filed by the parties. The Preachers seek a declaration that their First Amendment rights have been violated, permanent injunctive relief,

5

and nominal damages. Columbia seeks to have the case dismissed with prejudice arguing that there has been no violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

With full briefing by all parties completed, the Court is now prepared to rule on the Cross Motions for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. 42 U.S.C. § 1983

Title 42, U.S.C. § 1983, derived from § 1 of the Civil Rights Act of 1871, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Supreme Court has held that § 1983 creates a "'species of tort liability' that favors persons who are deprived of their 'rights, privileges or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253 (1978).

As a threshold requirement, "[t]he first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see also Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982); *Moody v. Jefferson Parish Sch. Bd.*, 803 F. Supp. 1158, 1193 (E.D. La. 1992) (finding that a plaintiff can maintain a suit under § 1983 "only if he or she has been deprived of exercising a constitutional right.").

The Preachers argue that because the sidewalk is a type of public forum, the officers' removal of them from the intersection amounted to content discrimination. Specifically, the Preachers argue that their First Amendment rights have been violated because the officers found

their signs to be offensive. The Preachers also argue that because Russell was arrested and charged with violating three statutes[1] that the Court later determined to be inapplicable, the First Amendment rights of the Preachers were violated.

Columbia argues that the Preachers' First Amendment rights were not violated and that the removal of the Preachers from the intersection was based on a valid exercise of Columbia's authority. Columbia argues that the officers' actions were not improper or based on some discriminatory motive designed to prevent the Preachers from exercising their First Amendment rights, but merely to protect the safety of pedestrians and prevent traffic accidents.

Although the Court previously determined in its May 5, 2005 Opinion that the Preachers have a First Amendment right to demonstrate in public fora, and all three statutes used by Columbia to arrest Russell were inapplicable to the Preachers' activities, the Court's previous findings do not necessarily compel the additional finding that the Preachers' First Amendment rights were violated.

While not relied upon to remove or arrest the Preachers, several other reasons were previously advanced by Columbia for the prohibition of demonstrations on, and the removal of the Preachers from, the intersection. These justifications include the duty of the state to maintain the public roadways in a condition that is reasonably safe and the statutory prohibition against

---

[1] The Court previously determined that it did not have to reach the question concerning the constitutionality of the statutes because the Court held the statutes to be inapplicable to the Preachers. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

obstruction of a highway.[2]

The Court held that both of these potential statutory restrictions on the Preachers' activities are content-neutral time, place, and manner regulations of general applicability. The Court further determined that there was no evidence to suggest that either was adopted by the government for the purpose of disfavoring any particular speech or viewpoint.

The Court also held that these restrictions do not restrict any more First Amendment activity than is necessary to promote the significant interest of promoting traffic flow and safety, and the restrictions leave open ample alternative channels of communication. *See Schenck v. ProChoice Network of Western New York*, 519 U.S. 357, 376 (1997) (recognizing the significant government interest in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights.").

The Court then concluded that the statutory prohibition against highway obstruction and the duty to maintain safe roads are both narrowly tailored regulations which prevent the Preachers from demonstrating on the shoulder of the road at the intersection.

The Preachers now provide the Court with a DVD depicting part of the events on May 21, 2005. The Preachers claim that they were prohibited from exercising their First Amendment rights when Russell and Coleman were arrested for failing to obey officers and move away from the intersection. However, after reviewing the evidence, the Court concludes that the officers were not prohibiting the Preachers' demonstration, but again, merely trying to move the Preachers away from the intersection for the safety of drivers as well as the Preachers.

---

[2]These statutes are codified at La. Rev. Stat. 14:97, entitled "Simple Obstruction of a Highway of Commerce;" and La Rev. Stat. 48:21, providing that a state has a duty "to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence."

As a matter of law, the Preachers have failed to demonstrate a genuine issue of fact that their First Amendment rights have been violated. The Preachers have not presented any new evidence since the Court's initial Opinion to suggest that being restricted from demonstrating at the intersection rises to the level of a constitutional deprivation. *See Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir. 1991) ("Not every common law tort committed by state or local government officials is actionable under § 1983."). For reasons previously discussed in the Court's Opinion on May 5, 2005, the Court finds that the Preachers have not demonstrated that there has been a constitutional deprivation of their First Amendment rights, and their 42 U.S.C. § 1983 claim is DISMISSED WITH PREJUDICE.

Because the Preachers' claim is dismissed, the preliminary injunction previously ordered by the Court is DISSOLVED. The Court finds that the Preachers have not created an issue of fact that Columbia has prevented their exercise of a constitutional right. Thus, the Court need not address the Preachers' request for declaratory and injunctive relief.

Further, because the Preachers have not satisfied the threshold requirement of demonstrating a violation that rises to the level of a constitutional deprivation, they are not entitled to an award of nominal damages.

### C. 42 U.S.C. § 1988

Title 42, U.S.C. § 1988 provides, "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the 'substantial right of the parties. . .'" *Hanrahan v. Hampton*, 446 U.S.

754, 758 (1980).

> To qualify as a prevailing party the plaintiff must:
>
> (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.

*See Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003).

The Preachers contend that because they were successful in obtaining a partial preliminary injunction, they should be considered a prevailing party for purposes of recovery under § 1988. The Preachers argue that because Columbia was enjoined from enforcing the three statutes in question, the relationship between the parties was materially altered, and their First Amendment rights were benefitted.

While the Preachers' preliminary injunction was partially granted, Columbia argues that the Preachers should not recover because the merits of their claims were not considered by the Court. Because the Court held in its Opinion that the Preachers failed to establish a substantial likelihood that they would prevail on the merits and because the Court did not consider the other three factors when considering a preliminary injunction, Columbia contends that the Preachers cannot be considered a prevailing party.

Although the Court enjoined Columbia from applying the three statutes against the Preachers as those statutes had been applied in the past, the Court did not enter the injunction based on the merits of the Preachers' claims. To the contrary, the Court specifically declined to discuss the constitutional merits of the Preachers' claims, indicating that because the Court found the statutes to be inapplicable, the Court would not address the Preachers' contention that the statutes were unconstitutional as applied in the future.

While the Preachers obtained technical "relief" in the form of a partial preliminary injunction, that relief was not on the merits of their claim. *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (finding that a plaintiff prevails "when actual relief *on the merits of his claim* materially alters the legal relationship between the parties.") (emphasis added); *see also Lleh, Inc. v. Wichita County*, 289 F.3d 358, 371 (5th Cir. 2002). Likewise, the preliminary injunction did not materially alter the legal relationship between the parties nor did it modify Columbia's behavior. The Court's preliminary injunction merely required Columbia's police officers to lawfully enforce the state statutes. It did not modify the parties' behavior to the extent that it would allow the Preachers to exercise their First Amendment rights by obstructing public roadways or demonstrating in areas that would jeopardize public safety.

The Court finds that the Preachers are not entitled to recover attorneys' fees under § 1988, and Columbia's Motion for Summary Judgment is GRANTED.

## III. CONCLUSION

The Preachers' Motion for Summary Judgment is DENIED. Columbia's Motion for Summary Judgment is GRANTED and the Preachers' 42 U.S.C. § 1983 claim is DISMISSED WITH PREJUDICE. Columbia's Motion for Summary Judgment on the Preachers' request for attorneys' fees under § 1988 is GRANTED. Further, the preliminary injunction previously ordered on May 5, 2005, is DISSOLVED.

MONROE, LOUISIANA, this 25th day of January, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE